MOUNT HOPE IRON COMPANY *vs.* EDMUND BUFFINTON.

An engine was built by A. for B. under a contract which provided that it should be paid for as the work on it progressed, reserving a margin of twenty per cent. until it should be "started in a satisfactory manner;" that it should be delivered at B.'s dock, and transported at B.'s expense to his works; that B. should prepare a foundation for it, and add to it materials and work of his own; and that A. should be required to furnish at B.'s works only the skilled labor required to set it up and start it. The engine was delivered at the wharf, transported to the works, and the whole price paid except the twenty per cent., when it was attached as the property of A. *Held,* that the title to it had passed to B. as against A. and his creditors.

REPLEVIN of a cylinder and bed piece, parts of a steam engine, attached by the defendant, a deputy sheriff, while on premises of the plaintiffs at Somerset, on a writ against the Hope Iron Works of Providence, in the state of Rhode Island.

At the trial in the superior court, before *Reed,* J., it appeared that the engine was built by the Hope Iron Works under a contract with the plaintiffs, of which the material part was as follows : " The Hope Iron Works, for and in consideration of the contract price to be paid by the Mount Hope Iron Company, agree to build and finish and deliver on the wharf in Somerset, by March 1, 1868, a condensing engine 34 inches diameter of cylinder and five feet stroke, of good materials and first class workmanship in the working parts (all other parts where it is not required to be left plain without finish) except the outboard pillow block, and forging for main shaft, to furnish plans for the foundation, and to send good and skilful mechanics 'o set up

the same on the foundation prepared by the Mount Hope Iron Company, and start the same into operation, for the sum of $11.500, to be paid for as the work progresses, except twenty per cent. reserved until the engine is started in a satisfactory manner; also to furnish a Judson valve and governor with the engine. The Mount Hope Iron Company hereby agree to accept said engine according to the foregoing description, and pay for the same upon the terms named; to furnish the outboard pillow block, and forging for main shaft; to receive the engine on their dock at Somerset, make no charge for wharfage, do all the drayage, hauling and handling required in transporting from their wharf and setting up, and furnish all necessary facilities and use of machine shop and tools for that purpose free of charge to the Hope Iron Works; also to furnish the foundation of the engine from plans of the Hope Iron Works, and the long holding-down bolts, and all steam and exhaust pipes; and also to bring the water and connect with the condenser; the Hope Iron Works furnishing at Somerset only the skilled labor required in setting and starting the engine." It further appeared that the engine was landed at the wharf mentioned in the contract, and was transported thence by the plaintiffs to their works, some rods distant; that the plaintiffs had sent to the Hope Iron Works for men to come and set up the engine, and were preparing the foundation at their own works, when the defendant attached the cylinder and bed piece as the property of the Hope Iron Works; that, at the time of the attachment, it would have required about four weeks' labor to set up and start the engine; and that the plaintiffs had paid for the work as it progressed, and had, at the time of the landing and of the attachment, paid the whole price except the twenty per cent. named in the contract.

The only question raised in the case was, whether the title to the engine had become complete in the plaintiffs at the time of the attachment; and the judge, being of opinion that upon the foregoing facts the title had vested in the plaintiffs at that time, directed the jury to return a verdict for them, which was done; and the defendant alleged exceptions.

*E. H. Bennett,* for the defendant, cited *Phelps* v. *Willard,* 16 Pick. 29; *Williams* v. *Jackman,* 16 Gray, 514; *Wright* v. *Tetlow,* 99 Mass. 397; *Andrews* v. *Durant,* 1 Kernan, 35.

*J. C. Blaisdell,* for the plaintiffs.

WELLS, J.    This case differs in several respects from that of *Phelps* v. *Willard,* 16 Pick. 29, relied upon by the defendant.    In that case there was no payment of the purchase money, and, by the terms of the contract, no part of it was to be paid until the machine should be set up at the works of the purchaser, and made to operate to his satisfaction.    The purchaser was not to add to the machine any materials or labor of his own, before it was thus completed; and if not completed so as to work to the satisfaction of the purchaser, the seller or manufacturer was to take it away again.    The court held that, although the machine was upon the premises of the purchaser and attached to his mill, the legal title and right of possession did not pass until the terms of the contract had been fulfilled, or the purchaser had accepted the machine so as to become liable for the price.

In the present case, there was, in fact, and by the terms of the contract, payment for the property as the work progressed, reserving a margin of twenty per cent. until the engine should be " started in a satisfactory manner."    The contract provided that the engine should be delivered, at a certain date, on the wharf at Somerset; and thereupon the purchasers were to transport it to their works, prepare a foundation for it, and add to it materials and work of their own ; the sellers being obligated to furnish towards the work necessary to be done in setting up and starting the engine "only the skilled labor required."    It is manifest from the whole tenor and terms of the contract that the delivery provided for, at the wharf in Somerset, was intended to be a delivery which should transfer to the purchasers the possession of the engine, and that it did vest in them the legal right of possession and property.    They might perhaps have rescinded the contract and restored the title, upon a subsequent breach of the contract by the other party, or a failure to complete and start the engine in a satisfactory manner.    But they might also elect to retain the possession and title, relying upon

their contract, and the margin of twenty per cent. of the price in their hands, for their indemnity. At the time of the attachment, the plaintiffs were in possession of the engine, including the cylinder and bed piece, with a right of possession and property which was valid and sufficient against the Hope Iron Works and their creditors. The ruling of the court below was correct, and the                         *Exceptions must be overruled.*